IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DENZIL McKATHAN,** : | |
| Petitioner, : | |
| : | CIVIL ACTION 15-00611-KD-C |
| v. : | |
| : | CRIMINAL ACTION 14-00290-KD-C |
| **UNITED STATES OF AMERICA,** : | |
| Respondent. : | |

**ORDER**

This matter is before the Court on the Federal Rule of Civil Procedure 59(e) Motion to Vacate filed by Petitioner Denzil McKathan, the United States' response, and Petitioner's Reply. (Docs. 99, 102, and 106). Petitioner moves the Court to either vacate its Order and Judgment (Docs. 95, 97) or to grant a Certificate of Appealability. Upon consideration, the motion is **DENIED** as to Petitioner's request to vacate and **GRANTED** as to Petitioner's request for a Certificate of Appealabilty.

Though Petitioner's Rule 59(e) motion is styled as a motion to vacate, Rule 59(e) provides for alteration or amendment of a judgment. As such, the Court's amends its previous Order (Doc. 95) in order to fully address Petitioner's Fifth Amendment based ineffective assistance of counsel claim and to expand its additional findings contained in Doc 95. The Judgment, entered May 31, 2017, remains in effect. (Doc. 97). *See also Rule 60(a)*(providing for the Court's own ability to correct an oversight or omission).

I. **Previously Addressed Claims**

On May 25, 2017, the Court entered an Order adopting the United States Magistrate Judge's Report and Recommendation, which included additional findings. (Doc. 95). Petitioner's

claims regarding ineffective assistance of counsel were denied and his claim regarding the calculation of his sentence was granted. (*Id.*).  Petitioner was set for resentencing. (*Id.*).

On June 14, 2017, pursuant to Federal Rule of Civil Procedure 59(e), Petitioner moved to vacate the above referenced Order. (Doc. 99).[1] Petitioner argues that the Court relied on factual findings that are not supported by the record.  Specifically, Petitioner takes issue with the statement that "the Probation Officer had searched his phone and *had already discovered* the evidence of Petitioner's viewing of child pornography."

Upon review, though more precise wording may have been employed, the Court does not misunderstand the sequence of facts. As discussed in the Order, Petitioner contends he would not have pled guilty had his attorney recognized that he had a Fifth Amendment challenge to the statement he made to his Probation Officer admitting he had accessed child pornography.  This admission was made after the Probation Officer searched his phone and discovered a browser history showing searches for "sexy little girls" and "pre-teen".[2]  The reference to "the overwhelming physical evidence against Petitioner" was the evidence discovered, after Petitioner's admission, as a result of further examination of the phone.

**II.    Fifth Amendment Claims**

In his amended motion, Petitioner also contends that counsel was ineffective for failing to pursue a Fifth Amendment based challenge to the statements made prior to the Probation Officer's search of his cell phone: 1) the admission that the phone belonged to Petitioner, 2) Petitioner's admission that the phone had internet access, and 3) Petitioner's entry of the PIN code required to unlock the cell phone.  This argument was furth er developed in the current Rule 59(e) motion.  Upon review of the record and consideration of Petitioner's motion to reconsider

---

[1] All references to "the Order" are to Doc. 95. The accompanying Judgment was entered May 31, 2017. (Doc. 97).
[2] *See* Report and Recommendation (Doc. 84 at 5-6, n. 5) for a detailed description of Petitioner's interaction with the Probation Officer.

(Doc. 99), the Court finds that the Fifth Amendment claim would have been unsuccessful, and thus Defendant did not suffer prejudice as a result. *See Strickland v. Washington,* 466 U.S. 668 (1984).

Petitioner alleges that counsel was ineffective for failing to raise a Fifth Amendment challenge pertaining statements made by the Petitioner in response to questions from the Probation Officer. "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.,* 542 U.S. 177, 189 (2004)(citing *United States v. Hubbell,* 530 U.S. 27, 34-38 (2000). Petitioner alleges that he was compelled to answer the Probation Officer's questions or he would be revoked.

Pursuant to the standard conditions of supervision, Petitioner was required to "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." (Doc. 23, 05-CR-00094 at 4). Petitioner was also required to "consent to periodic, unannounced examinations of his computer equipment, which may include retrieval and copying of all data from his computer and any internal or external peripherals to ensure compliance with this condition, and/or removal of such equipment for the purpose of conducting more thorough inspection." (Doc. 23, 05-CR-00094 at 7).

The Court begins with an examination of the merits of a challenge to entry of the PIN code. While it appears the statement was both testimonial[3] and incriminating,[4] pursuant to

---

[3] "…[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. *Doe v. United States*, 487 U.S. 201, 210 (1988). Justice Stevens' dissent in *Doe* stated, in part:
> A defendant can be compelled to produce material evidence that is incriminating. Fingerprints, blood samples, voice exemplars, handwriting specimens, or other items of physical evidence may be extracted from a defendant against his will. But can he be compelled to use his mind to assist the prosecution in convicting him of a crime? I think not. He may in some cases be forced to surrender a key to a strongbox containing incriminating documents, but I do not believe he can be compelled to reveal the combination to his wall safe—by word or deed.

3

*Minnesota v. Murphy,* disclosure of the PIN code was not compelled. 465 U.S. 420 (1984). The Eleventh Circuit has summarized *Minnesota v. Murphy* as follows:

> The Supreme Court has stated that a state may generally require a probationer to appear and discuss matters that affect his probationary status without violating the Fifth Amendment. *Minnesota v. Murphy,* 465 U.S. 420, 435, 104 S.Ct. 1136, 1146, 79 L.Ed.2d 409 (1984); *see also United States v. Robinson,* 893 F.2d 1244, 1245 (11th Cir.1990) (affirming revocation of convicted currency smuggler's probation where probationer violated condition of release by refusing to answer questions regarding sources of income). The Court in *Murphy* admitted some exceptions to the general rule, such as where a state forces a probationer to answer incriminating questions over a claim of privilege:
>
>> The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.
>
> *Murphy,* 465 U.S. at 435, 104 S.Ct. at 1146. The Court went on to note, however, that "questions put to a probationer [that] were relevant to his probationary status and posed no realistic threat of incrimination in a separate criminal proceeding" would not violate the Fifth Amendment. *Id.* at 435 n. 7, 104 S.Ct. at 1146 n. 7.

---

*Doe v. United States*, 487 U.S. 201, 219 (1988). The majority clarified, "We do not disagree with the dissent that '[t]he expression of the contents of an individual's mind' is testimonial communication for purposes of the Fifth Amendment…" *Id*. at 210, n. 9.  Petitioner's provision of the PIN is akin to revealing the combination to a safe, rather than providing a key to a lock box, as it required Petitioner to "use his mind," and entry of the PIN permitted the Probation Officer to access to the phone's contents. Petitioner's entry of his unique PIN was a testimonial communication.

[4] While the contents of the PIN code itself may not have been incriminating, its provision led to incriminating evidence, and is thus protected under the Fifth Amendment. *See United States v. Hubbell*, 530 U.S. 27, 37, 120 S. Ct. 2037, 2044, 147 L. Ed. 2d 24 (2000) ("Finally, the phrase 'in any criminal case' in the text of the Fifth Amendment might have been read to limit its coverage to compelled testimony that is used against the defendant in the trial itself. It has, however, long been settled that its protection encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence.").

*United States v. Zinn*, 321 F.3d 1084, 1091 (11th Cir. 2003)(footnote omitted).[5] The general rule is that the Fifth Amendment privilege is not self-executing. *Murphy* at 434. Thus, unless certain circumstances are present, an individual must invoke his right not to incriminate himself.

When the Probation Officer asked Petitioner to enter his PIN code, Petitioner could have either 1) consented, 2) refused, or 3) invoked his Fifth Amendment privilege against self-incrimination. Here, Petitioner did not invoke the privilege. Instead he complied with his conditions of supervised release and consented by inputting the PIN code.

Like Petitioner, "Murphy was informed that he was required to be truthful with his probation officer in all matters and that failure to do so could result in revocation of probation." *Id*. at 436. As the *Murphy* Court explained:

> We note first that the general obligation to appear and answer questions truthfully did not in itself convert Murphy's otherwise voluntary statements into compelled ones. In that respect, Murphy was in no better position than the ordinary witness at a trial or before a grand jury who is subpoenaed, sworn to tell the truth, and obligated to answer on the pain of contempt, unless he invokes the privilege and shows that he faces a realistic threat of self-incrimination. The answers of such a witness to questions put to him are **not compelled within the meaning of the Fifth Amendment** unless the witness is required to answer over his valid claim of the privilege.

*Id*. at 427 (emphasis added). Petitioner did not claim the privilege and was not required to answer over his valid claim of privilege, thus his entry of the PIN was not compelled.

Petitioner testified that he believed he would be revoked if he did not provide the PIN code. Similarly, "[b]ecause revocation of his probation was threatened if he was untruthful with his probation officer, Murphy argue[d] that he was compelled to make incriminating disclosures instead of claiming the privilege." *Id.* at 434. The *Murphy* Court held, "[a]lthough this contention

---

[5] The omitted footnote, footnote nine, states: "The Court held in *Murphy* that a Fifth Amendment privilege was not self-executing where a probationer is required to answer questions affecting his probation. In other words, even if the probationer gave incriminating testimony, such testimony would not be barred in a subsequent proceeding unless the probationer actually asserted a claim of privilege. See *Murphy,* 465 U.S. at 440, 104 S.Ct. at 1149."

is not without force, we find it unpersuasive on close examination." *Id*. "If Murphy did harbor a belief that his probation might be revoked for exercising the Fifth Amendment privilege, that belief would not have been reasonable. Our decisions have made clear that the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege." *Id*. at 438.

Petitioner's conditions of supervised release did not expressly or implicitly state that invocation of the privilege would lead to revocation of probation, nor is there any evidence that the Probation Officer made any such implicit or explicit threat. In *Murphy*, "[t]he State court did not attempt to define the precise contours of Murphy's obligation to respond to questions. On its face, Murphy's probation condition proscribed only false statements; it said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege with respect to further criminal prosecution." Id. at 437. The same is true in Petitioner's case. "A state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, *without more*, does not give rise to a self-executing privilege." *Id*. at 435 (emphasis added).

The applicable conditions of Petitioner's term of supervised release were no different than those present in the *Murphy* case and there is no evidence that either the Probation Officer or the conditions of supervised release required "more," as described in *Murphy*. Thus, McKathan was required to assert the privilege and he failed to do so.

For the same reasons disclosure of the PIN was not compelled, Petitioners statements that the cell phone belonged to him and that it had internet access were not compelled. Any effort by counsel to raise a Fifth Amendment claim as to any of these three statements would have been

6

unsuccessful. Thus, counsel was not ineffective for failing to raise it.[6] Accordingly, Petitioner's motion to vacate (Doc. 99) is **DENIED**.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Proceedings, provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R.App. P. 22(b)(1). And, the "certificate of appealability may issue ... *only* if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)(emphasis added). To make a substantial showing of the denial of a constitutional right, the applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003) (citations and internal quotations omitted). Here, the Court finds that the issues presented are "adequate to deserve encouragement to proceed further." *Id*. Accordingly, Petitioner's request for a Certificate of Appealability is **GRANTED**.

---

[6] *See United States v. Godwin*, 2014 WL 6978864, at *4 (N.D. Fla. Dec. 10, 2014)(collecting cases)("Counsel is not ineffective for failing to preserve or argue a meritless claim. *Freeman v. Attorney General, Florida,* 536 F.3d 1225, 1233 (11th Cir.2008); *see also Sneed v. Florida Dep't of Corrections,* 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States,* 345 F. App'x 506, 508 (11th Cir.2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir.2002) (counsel not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore,* 240 F.3d 907, 917 (11th Cir.2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); *Meeks v. Moore,* 216 F.3d 951, 961 (11th Cir.2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring,* 42 F.3d 1350, 1359 (11th Cir.1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield,* 960 F.2d 970, 974 (11th Cir.1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster,* 880 F.2d at 375 (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).").

## IN FORMA PAUPERIS

The Court has previously determined that Petitioner is indigent and counsel from the Criminal Justice Act ("CJA") panel was appointed to represent him. (Docs. 19, 32, and 55). Rule 24(a)(3) of the Federal Rules of Appellate procedure provides:

> A party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:
>
> (A) the district court--before or after the notice of appeal is filed--certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding; or
>
> (B) a statute provides otherwise.

Fed. R. App. P. 24(a)(3). The Court has determined that Petitioner is entitled to a Certificate of Appealability. It also appears that if Petitioner chooses to appeal the denial of his 28 U.S.C. § 2255 motion, it would be in good faith. As such, he would be entitled to do so *in forma pauperis*.

**DONE** and **ORDERED** this **18th** day of **July 2017.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**